1
2
3
4
5
6
7

8 # UNITED STATES DISTRICT COURT

9 ## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  ALCAPONE ALO, | Case No. 1:23-cv-00536-SAB |
| 12  Plaintiff, | SCREENING ORDER GRANTING PLAINTIFF LEAVE TO FILE A FIRST |
| 13  v. | AMENDED COMPLAINT |
| 14  CAROLE GOLDSMITH, et al., | (ECF No. 1) |
| 15  Defendants. | **THIRTY (30) DAY DEADLINE** |

16

17      Alcapone Alo ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed this action on

18 April 6, 2023.  Plaintiff's complaint is currently before the Court for screening.

19 ## I.

20 ## SCREENING REQUIREMENT

21      Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court

22 determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which

23 relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from

24 such relief."  28 U.S.C. § 1915(e)(2); see Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000)

25 (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners);

26 Calhoun v. Stahl, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis*

27 proceedings which seek monetary relief from immune defendants); Cato v. United States, 70

28 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis*

complaint under 28 U.S.C. § 1915(e)); <u>Barren v. Harrington</u>, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim).  The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and accept as true all factual allegations contained in the complaint.  <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).  Although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  <u>Iqbal</u>, 556 U.S. at 678.  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.' "  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 557).  Therefore, the complaint must contain sufficient factual content for the court to draw the reasonable conclusion that the defendant is liable for the misconduct alleged.  <u>Iqbal</u>, 556 U.S. at 678.

## II.

## COMPLAINT ALLEGATIONS

The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.

Plaintiff names all Defendants in their individual and official capacities.  Plaintiff first names as a Defendant Dr. Carole Goldsmith, identified as a District Chancellor.  Plaintiff then names four persons under the heading "Governing Board": (1) Nasreen Johnson, President; (2)

1  Magdalena Gomez, Vice President; (3) Danielle Parra, Secretary; and (4) Richard M. Caglia,
2  Trustee.   Plaintiff then names the following Defendants under the heading "Financial Aid
3  Office": (1) Sylvia Cuevas, Manager of Financial Aid; (2) Mikki Johnson, Director of Financial
4  Aid; and (3) other unknown members of the Financial Aid Committee.  Plaintiff then names Dr.
5  Robert Pimentel, President of Fresno City College, and Lataria Halls, Vice President of Fresno
6  City College.

7          Plaintiff alleges that on January 6, 2022, Plaintiff attended the Spring term at Fresno City
8  College with the intention of becoming an auto mechanic.  (Compl. 3.)  Plaintiff attempted to
9  complete 12 units, but was unsuccessful in completing all courses according to 20 U.S.C. 1091
10  standards and institution satisfaction.   Plaintiff refers to a S.C.C.C.D. SAP Policy ("SAP
11  Policy").  On June 1, 2022, Plaintiff received an email from the financial aid office indicating a
12  decision had been made after reviewing his file, and that informed Plaintiff that the school was
13  placing him on a financial aid warning status due to not meeting the program satisfaction and
14  SAP Policy.   While he was placed on the warning status, Plaintiff states the SAP Policy
15  requirements allow the student to meet with a financial aid specialist counselor to map out an
16  academic plan, and then the responsibility would rest on the student to execute such plan.
17  Plaintiff states that prior to the committee's decisions, he was not given the opportunity defend,
18  and not given an opportunity to present his argument and evidence orally.

19          On August 13, 2022, Plaintiff filed an appeal.  Plaintiff was told to fill out the forms, turn
20  it in, and wait for the decision to be made.  On September 12, 2022, the appeal was denied
21  stating Plaintiff was not meeting the requirements specified in the SAP Policy.

22          On December 7, 2022, the financial aid office emailed Plaintiff with a 2021-2022
23  Referral Notification Letter, stating they had referred debt to the U.S. Department of Education,
24  Debt Resolution Division.  When attempting to register for the 2022-2023 term, Plaintiff states
25  the "Holder of Overpayment Debt" (the Fresno City College/Financial Aid Office), was
26  preventing him from registering for courses due to overpayment that had been referred to the
27  secretary in accordance with 34 CFR 690.79(c)  Plaintiff avers that after referring payments to
28  the secretary, the institution need make no further effort to recover overpayments after

1   complying with 34 CFR 690.79(b)(2)).

2          Plaintiff states Defendants are authorized under "C.F.R. Title 34 Education to statutorily

3   deprive a student of the right to a **'Protected Property Interest' afforded by the 14th**

4   **[A]mendment** without regards to some form of hearing," and "[n]othing stated within the codes

5   on providing a hearing to students that have been or will be deprived of this right," and Plaintiff

6   is certain that students before and after him will suffer the same consequences.  (Compl. 3.)

7          Plaintiff brings three claims.  First, Plaintiff claims a violation of the Due Process Clause

8   under the Fifth and Fourteenth Amendments, based on Defendants' failure to provide a proposed

9   termination and pre-termination hearing prior to terminating "Title IV/Public Benefits . . . within

10  the meaning of 8 U.S.C. [§] 1611(c)1."[1]  Plaintiff claims that between August 23, 2022, until

11  September 12, 2022, Plaintiff was deprived of the right to be heard and right to be present his

12  argument orally, and proffers that written submission does not constitute oral argument because

13  it is not an effective means to communicate with the decision maker.  (Compl. 4.)

14         Plaintiff's second claim is for "conspiracy to deprivation of rights under color of law and

15  'custom and usage.' "  (Compl. 4.)  Here, Plaintiff states that the Governing Board and District

16  Chancellor "had the opportunity & the authority to prohibit its employees from continuously

17  violating my right to be heard.  The 'Board' was also aware of the situation because I sent them a

18  copy of my complaint demanding to be heard but failed to conduct a hearing.  (Compl. 4.)

19         Plaintiff's third claim is "challenging the constitutionality of statute at large, C.F.R. Title

20  34 Education, & S.C.C.C.D. SAP Policy."  (Compl. 4.)  Here, Plaintiff states that "[w]hile

21  providing hearings are not required for some benefits, Title IV have echoed amongst high courts

22  as a 'Protected Property Interest' within the meaning of 'Life, Liberty, & Property' specified in

23

24  [1]  Plaintiff does not refer to his citizenship or residency status as related to the denial of his financial aid.  The cited
    provision is entitled "Aliens who are not qualified aliens ineligible for Federal public benefits," and provides in one
25  regard that "[n]otwithstanding any other provision of law and except as provided in subsection (b), an alien who is
    not a qualified alien (as defined in section 1641 of this title) is not eligible for any Federal public benefit (as defined
26  in subsection (c))," and also provides that such subsection does not apply to a number of  statutorily excepted
    categories of "Federal public benefits," including medical assistance under Title XIX of the Social Security Act.  8
27  U.S.C. § 1611(a)-(b)(1)(A).  Further, "Federal public benefit" is defined to include "any . . . postsecondary
    education . . . or any other similar benefit for which payments or assistance are provided to an individual . . . by an
28  agency of the United States or by appropriated funds of the United States."  8 U.S.C. § 1611(c)(1)(B).

1   [the] 14th [A]mendment.  Therefore, statute at large, C.F.R. Title 34 Education, & S.C.C.C.D.

2   SAP Policy lacks the meaning of due process."  (Compl. 4.)

3         By way of relief, Plaintiff requests that: (1) a preliminary injunction ordering the

4   Defendants to restore the Plaintiff's financial aid status to good standing, waiving any allegedly

5   owed fees and debt; (2) $500.00 per Defendant, in damages pursuant to 42 U.S.C. § 1983; and

6   (3) $3,000.00 for mental and emotional distress caused by the denial of due process.  (Compl. 4.)

7   **III.**

8   **DISCUSSION**

9         For the reasons discussed below, Plaintiff has failed to state a cognizable claim.  Plaintiff

10  shall be provided the opportunity to file an amended complaint to attempt to correct the

11  deficiencies at issue.

12        **A.      Federal Rule of Civil Procedure 8**

13        Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim

14  showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  "Such a statement must

15  simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which

16  it rests."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation and internal

17  quotation marks omitted).  Detailed factual allegations are not required, but "[t]hreadbare recitals

18  of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

19  Iqbal, 556 U.S. at 678 (citation omitted).  This is because, while factual allegations are accepted

20  as true, legal conclusions are not.  Id.; see also Twombly, 550 U.S. at 556-57; Moss v. U.S.

21  Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  Therefore, Plaintiff must set forth "sufficient

22  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Iqbal,

23  556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the

24  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

25  defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550

26  U.S. at 556).

27        As currently pled, Plaintiff's complaint does not contain enough factual details to permit

28  the Court to draw the reasonable inference that any named Defendants are liable for any

1   misconduct alleged.  Iqbal, 556 U.S. at 678.  Plaintiff does not state any specific actions that any

2   named Defendants took relating to any alleged misconduct.  Plaintiff does not mention any of the

3   individual Defendants again after naming them as Defendants, and the only time Plaintiff uses a

4   term other than generally referring to all "Defendants," is under the second claim for conspiracy,

5   where Plaintiff alleges that the Governing Board generally, and the District Chancellor, "had the

6   opportunity & the authority to prohibit its employees from continuously violating my right to be

7   heard," and mentions the "Board" was aware of the situation because he sent them of a copy of

8   his complaint requesting a hearing.  Plaintiff makes no specific allegation explaining when or

9   how communications were made to any specific Defendants on the dates provided.  Plaintiff only

10  vaguely states he filed an appeal and that the appeal was denied.  Plaintiff does not describe who

11  the appeal was made to, or the basis of the appeal.

12      Plaintiff's complaint fails to give fair notice of all of the allegations and claims directed

13  against the Defendants.  For these reasons, Plaintiff's complaint does not comply with the

14  requirements of Rule 8(a)(2).  The Court will grant Plaintiff leave to file an amended complaint

15  to allow Plaintiff to provide additional and specific factual details to the Court.  If Plaintiff

16  chooses to file an amended complaint, he should consider the legal standards the Court provides

17  in the following sections.

18      **B.      Linkage Requirement under Section 1983 and Supervisory Liability**

19      For the same reasons explained in the previous section, Plaintiff also fails to establish an

20  adequate link between the actions of any named Defendant and the constitutional injury.  Section

21  1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal

22  rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th

23  Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v.

24  Williams, 297 F.3d 930, 934 (9th Cir. 2002).  The statute provides:

25          Every person who, under color of [state law] ... subjects, or causes to be
26          subjected, any citizen of the United States ... to the deprivation of any rights,
            privileges, or immunities secured by the Constitution ... shall be liable to the party
27          injured in an action at law, suit in equity, or other proper proceeding for redress.

28  42 U.S.C. § 1983.  "Section 1983 is not itself a source of substantive rights, but merely provides

1   a method for vindicating federal rights elsewhere conferred." <u>Crowley v. Nevada ex rel. Nevada</u>

2   <u>Sec'y of State</u>, 678 F.3d 730, 734 (9th Cir. 2012) (citing <u>Graham v. Connor</u>, 490 U.S. 386, 393-

3   94 (1989)) (internal quotation marks omitted).   The statute requires that there be an actual

4   connection or link between the actions of the defendants and the deprivation alleged to have been

5   suffered by Plaintiff.  <u>See</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>,

6   423 U.S. 362 (1976).   Thus, to state a claim, Plaintiff must allege facts demonstrating the

7   existence of a link, or causal connection, between each Defendant's actions or omissions and a

8   violation of his federal rights.   <u>Lemire v. California Dep't of Corr. and Rehab.</u>, 726 F.3d 1062,

9   1074-75 (9th Cir. 2013); <u>Starr v. Baca</u>, 652 F.3d 1202, 1205-08 (9th Cir. 2011).   The Ninth

10  Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right,

11  within the meaning of section 1983, if he does an affirmative act, participates in another's

12  affirmative acts or omits to perform an act which he is legally required to do that causes the

13  deprivation of which complaint is made." <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

14          Thus, there is no *respondeat superior* liability under section 1983, and therefore, each

15  defendant is only liable for his or her own misconduct.  <u>Iqbal</u>, 556 U.S. at 677.  To state a claim,

16  Plaintiff must demonstrate that each defendant personally participated in the deprivation of his

17  rights.  <u>Jones</u>, 297 F.3d at 934.  In other words, to state a claim for relief under § 1983, Plaintiff

18  must link each named defendant with some affirmative act or omission that demonstrates a

19  violation of his federal rights.

20          Plaintiff vaguely refers a claim of conspiracy in the complaint.   In the context of

21  conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to

22  support the existence of a conspiracy among the defendants." <u>Buckey v. County of Los Angeles</u>,

23  968 F.2d 791, 794 (9th Cir. 1992); <u>Karim-Panahi v. Los Angeles Police Department</u>, 839 F.2d

24  621, 626 (9th Cir. 1988).  Plaintiff must allege that defendants conspired or acted jointly in

25  concert and that some overt act was done in furtherance of the conspiracy.  <u>Sykes v. California</u>,

26  497 F.2d 197, 200 (9th Cir. 1974).

27          A conspiracy claim brought under section 1983 requires proof of "an agreement or

28  meeting of the minds to violate constitutional rights," <u>Franklin v. Fox</u>, 312 F.3d 423, 441 (9th

Cir. 2001) (quoting <u>United Steel Workers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional right, <u>Hart v. Parks</u>, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting <u>Woodrum v. Woodward County, Oklahoma</u>, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" <u>Franklin</u>, 312 F.3d at 441 (quoting <u>United Steel Workers</u>, 865 F.2d at 1541).

Plaintiff's complaint contains insufficient factual allegations to state a claim pursuant to Section 1983.[2]

## C.    Clarification of Plaintiff's Allegations and Legal Challenges

It is unclear as to certain policies and terms Plaintiff refers to in the complaint, and the Court turns to clarify some background information underlying Plaintiff's allegations, so to explain further the reasoning behind the Court's finding the complaint is insufficient under Rule 8 and to establish liability under Section 1983, as the Court found in the previous subsections. It is also helpful to engage in this discussion before turning to the legal standards applicable to due

---

[2]  Plaintiff also refers to "custom and usage" in the complaint.  To the extent Plaintiff is attempting to establish liability based on a custom or policy, Plaintiff has failed to show an underlying constitutional violation, nor a policy that was the moving force behind such alleged violation, aside from vaguely asserting that "students before and after have and will suffer the same consequences." (Compl. 3.)  A local government unit may only be held liable if it inflicts the injury complained of through a policy or custom.  <u>Waggy v. Spokane County Washington</u>, 594 F.3d 707, 713 (9th Cir. 2010).  Generally, to establish municipal liability, the plaintiff must show that a constitutional right was violated, the municipality had a policy, that policy was deliberately indifferent to plaintiff's constitutional rights, and the policy was "the moving force" behind the constitutional violation.  <u>Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown</u>, 520 U.S. 397, 400 (1997); <u>Burke v. County of Alameda</u>, 586 F.3d 725, 734 (9th Cir. 2009); <u>Gibson v. County of Washoe, Nev.</u>, 290 F.3d 1175, 1185-86 (9th Cir. 2002).  "The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.' "  <u>Castro v. Cty. of Los Angeles</u>, 833 F.3d 1060, 1075 (9th Cir. 2016) (quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 483 (1986)).  There can be no municipal liability without an underlying constitutional violation.  <u>Scott v. Henrich</u>, 39 F.3d 912, 916 (9th Cir. 1994).  A <u>Monell</u> claim can proceed under three theories of municipal liability: "(1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct."  <u>Brown v. Contra Costa Cty.</u>, No. C 12-1923 PJH, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) (citing <u>Clouthier v. Cty. of Contra Costa</u>, 591 F.3d 1232, 1249-50 (9th Cir. 2010)).  Whichever theory is alleged, the plaintiff must plead facts showing that "the policy is the moving force behind the constitutional violation."  <u>Dougherty v. City of Covina</u>, 654 F.3d 892, 900-01 (9th Cir. 2011); see also <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged.").  Further, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under <u>Monell</u>, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  <u>Tuttle</u>, 471 U.S. at 823-24.

1  process challenges generally and specifically as to educational financial aid.

2        It appears Plaintiff generally refers to and challenges the constitutionality of C.F.R. Title

3  34, as related to the requirements of Title IV.  "Title IV of the Higher Education Act was

4  established 'to assist in making available the benefits of postsecondary education to eligible

5  students...in institutions of higher education,' and authorizes federal student financial aid

6  programs, such as Pell Grants, 20 U.S.C. § 1070a, and federal work-study programs."  Oakley v.

7  Devos, No. 20-CV-03215-YGR, 2020 WL 3268661, at *4 (N.D. Cal. June 17, 2020) (citations

8  omitted).

9        Plaintiff's complaint identifies 20 U.S.C. 1091.  Plaintiff doesn't specifically assert which

10  provision of the statute he is relying on.  Plaintiff's complaint does not establish what type or

11  what amount of financial aid Plaintiff received.  The complaint does not, for example, specify

12  whether Plaintiff received grants, a loan, or work assistance.

13        The Court shall excerpt the general provisions pertaining to receiving a grant, loan, or

14  work assistance, and the portion of the law pertaining to satisfactory progress:

> In order to receive any grant, loan, or work assistance under this subchapter, a student must—
>
> **(1)** be enrolled or accepted for enrollment in a degree, certificate, or other program (including a program of study abroad approved for credit by the eligible institution at which such student is enrolled) leading to a recognized educational credential at an institution of higher education that is an eligible institution in accordance with the provisions of section 1094 of this title, except as provided in subsections (b)(3) and (b)(4), and not be enrolled in an elementary or secondary school;
>
> **(2)** if the student is presently enrolled at an institution, be maintaining satisfactory progress in the course of study the student is pursuing in accordance with the provisions of subsection (c);
>
> **(3)** not owe a refund on grants previously received at any institution under this subchapter, or be in default on any loan from a student loan fund at any institution provided for in part E, or a loan made, insured, or guaranteed by the Secretary under this subchapter for attendance at any institution; . . .
>
> **(5)** be a citizen or national of the United States, a permanent resident of the United States, or able to provide evidence from the Immigration and Naturalization Service that he or she is in the United States for other than a temporary purpose with the intention of becoming a citizen or permanent resident; and

**(6)** if the student has been convicted of, or has pled nolo contendere or guilty to, a crime involving fraud in obtaining funds under this subchapter, have completed the repayment of such funds to the Secretary, or to the holder in the case of a loan under this subchapter obtained by fraud. . . .

. . . **(c) Satisfactory progress**
**(1)** For the purpose of subsection (a)(2), a student is maintaining satisfactory progress if—

**(A)** the institution at which the student is in attendance, reviews the progress of the student at the end of each academic year, or its equivalent, as determined by the institution, and

**(B)** the student has a cumulative C average, or its equivalent or academic standing consistent with the requirements for graduation, as determined by the institution, at the end of the second such academic year.

20 U.S.C. § 1091(a)-(c).[3]

Thus, in part, Title IV is restricted as follows:

[T]he following categories of students, among others, are not eligible for title IV assistance: (a) Dreamers with or without Deferred Action for Childhood Arrival status; (b) other students with undocumented status; (c) students with pending asylum applications; (d) students with Temporary Protected Status or Deferred Enforced Departure status; and (e) students with U-visas. Among citizens and non-citizens alike, title IV also excludes from eligibility students who: (a) do not have a high school diploma, General Education Development certificate or equivalent, or recognized exception to these requirements; (b) are enrolled only in non-credit courses; (c) have not registered with Selective Service (males 18-25); (d) are also enrolled in high school; (e) have not maintained a "C" average or above by the end of their

---

[3] Plaintiff also cites to 34 C.F.R. 690.7(b)(2) and (c).  It is not clear the significance of the citation.  The regulation pertains to instances where an institution becomes ineligible to participate in the grant or loan program:

(b) If an institution becomes ineligible to participate in the Federal Pell Grant Program during an award year, an eligible student who was attending the institution and who submitted a valid SAR to the institution, or for whom the institution obtained a valid ISIR, before the date the institution became ineligible is paid a Federal Pell Grant for that award year for—
(1) The payment periods that the student completed before the institution became ineligible; and
(2) The payment period in which the institution became ineligible.
(c)(1) If an institution loses its eligibility to participate in the Direct Loan program under the provisions of subpart M or N of 34 CFR part 668, it also loses its eligibility to participate in the Federal Pell Grant Program for the same period of time.
(2) That loss of eligibility must be in accordance with the provisions of 34 CFR 668.187(d) or 668.206(d).

34 C.F.R. § 690.7(b)-(c).

1    second year; or (f) are in default on a federal student loan or owe
2    any refund amount on a federal student grant.

3    Oakley, 2020 WL 3268661, at *4 (citations omitted).

4    It appears "SCCCD" refers to State Center Community College District.   See

5    Richardson-Bass v. State Ctr. Cmty. Coll. Dist., No. 19-CV-01566-AWI-SAB, 2020 WL

6    5658225, at *1 (E.D. Cal. Sept. 23, 2020) ("The public entity that operates and controls [Fresno

7    City College] is Defendant State Center Community College District ('SCCCD')."); Thomas v.

8    Fresno City Coll., No. 115CV00826DADBAM, 2016 WL 1572739, at *1 (E.D. Cal. Apr. 19,

9    2016).

10    It appears that the SAP Policy is a "satisfactory academic progress" policy.   See

11    Crawford v. San Diego City Cmty. Coll., No. 18CV0831, 2018 WL 3629901, at *2 (S.D. Cal.

12    July 31, 2018).   "Colleges that participate in federal student loan programs are required to

13    maintain policies for satisfactory academic progress, and to confirm that students who are

14    otherwise eligible for student aid under the Higher Education Act are making satisfactory

15    academic progress under those policies."   Id. ("As required under these regulations, City College

16    maintains a policy which outlines the school's standards for maintaining satisfactory academic

17    progress and provides reasons which may result in a student's disqualification from financial

18    aid." (citing 34 C.F.R. §§ 668.16(e), 668.32(f), & 668.34)); see also Calisesi ex rel. U.S. v. Hot

19    Chalk, Inc., No. CV-13-01150-PHX-NVW, 2015 WL 1966463, at *7 (D. Ariz. May 1, 2015)

20    ("In order for an institution to participate in a Title IV, Higher Education Act program, *i.e.,*

21    become an 'eligible institution,' the institution must enter into a written Program Participation

22    Agreement with the Secretary of the Department of Education and agree that it will comply with

23    all statutes of or applicable to Title IV and all applicable regulations prescribed under Title IV.").

24    The Fresno City College website contains the following information pertaining to its

25    SAP Policy:

26    Satisfactory Academic Progress (SAP) Policy

27    You must meet three requirements to be considered to be making
      Satisfactory Academic Progress in order to receive financial aid.
28

11

1. Maintain a minimum cumulative Grade Point Average (GPA) of 2.0. This is the Qualitative Measure. A, B, C, D, RD, and F grades are used to calculate a student's GPA. Transferable units from prior colleges are not included in the GPA calculation. (If all classes are taken on a credit/non-credit basis, the GPA requirement will not apply).

2. Receive credit for at least 67% of the total units attempted. This is the Quantitative Measure (Pace of Progression). Withdrawals (W), Incompletes (I or IP), No Credit (N, NC or NP), Report Delay (RD) and Failing (F) grades are considered units attempted.

3. Have attempted less than 150% of the maximum cumulative units required for completion of their program. This is the Maximum Timeframe.

See https://www.fresnocitycollege.edu/admissions-aid/financial-aid-office/financial-aid-rules .html (last accessed May 8, 2023).[4]  The college website also provides the following information concerning withdrawal of financial aid and return of Title IV funds:

Withdrawals and Return of Title IV Funds Policy

Title IV funds are awarded to a student under the assumption that the student will attend school for the entire period for which the financial aid is awarded. When a student withdraws from all classes, the financial aid award amount for the student is affected. When a student receives a combination of F/W/I/RDs or all F/I/RDs, we must treat it as if the student stopped attending all classes. If there are any grade changes it is the student's responsibility to notify the Financial Aid Office prior to September 30th of the next school year.

According to Federal Student Aid regulations:

When a student fails to begin attendance in all classes but receives financial aid, the entire amount must be returned. The student is considered a "no show". The institution will return all federal funds disbursed to the student back to the Department of Education, and the student will be billed the amount returned.

When a student withdraws before completing more than 60% of the term, the student may no longer be eligible for the full amount of Title IV funds that the student was originally scheduled to receive. The financial aid office will perform a return of funds

---

[4]  Although not determinative to the Court's screening decision here, the Court finds it prudent to refer to this information in order to clarify the information contained in Plaintiff's complaint, which was insufficient.  See United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim.").  The Court finds the SAP Policy and other information concerning Title IV funds and agreements between students and the college, form the basis of Plaintiff's claims as proffered in the complaint.

calculation to determine how much the institution and the student must return. If the institution is required to return funds on the student's behalf, the student will be billed and a hold will be placed on the student's account, which will prevent students from registering from classes and obtaining academic transcripts.

When a student withdraws after completing more than 60% of the term, the student will not owe any repayment to the institution or the Department of Education. The student has earned 100% of the financial aid received.

When a student withdraws and the return of Title IV funds calculation performed indicates that a student has not received all financial aid entitled to, it is called a post-withdrawal disbursement. Our office will notify you by email.

See https://www.fresnocitycollege.edu/admissions-aid/financial-aid-office/financial-aid-rules.html (last accessed May 8, 2023).  The Fresno City College website also contains a "Terms of Agreement," outlining the terms applicable when a student accepts financial aid:

Terms of Agreement

Upon acceptance of financial aid (cashing a check or accepting direct deposit), I hereby certify that:

I will enroll in an eligible program and attend classes at one (or more) of the campuses/centers through State Center Community College District.

I understand that my financial aid award is subject to change according to my enrollment status.

I understand that if repayment is required, I will be ineligible to receive any additional grant money until repayment is complete. I understand that under repayment or default status, academic transcripts will not be released to other institutions.

I have read SCCCD's Financial Aid Satisfactory Academic Progress Policy and understand I must meet these standards in order to continue receiving financial aid.

I will promptly answer all letters related to my financial aid.

I will notify the Financial Aid Office if I change financial aid unit status, change attending institution or enroll in more than one institution.

I realize payment of EOPS or OASIS funds are contingent upon compliance with all applicable guidelines.

I realize I must be in the proper number of units approximately ten days before check disbursement date in order to receive my financial aid and I understand that I may NOT be paid for short-

term or wait-list classes until officially enrolled in and actually attending them.

I agree to repay any funds disbursed to me in error, or for any period of time I was not eligible to receive funding or was not enrolled.

I also understand that any fees owed to the institution will be subtracted from my financial aid check unless alternate payment arrangements have been made with the Campus Business Office.

See        https://www.fresnocitycollege.edu/admissions-aid/financial-aid-office/financial-aid-rules.html (last accessed May 8, 2023).

## D.    Insufficient Facts to State Due Process Claim

The Due Process Clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process. Albright v. Oliver, 510 U.S. 266, 272 (1994). The substantive protections of the due process clause bar certain governmental actions regardless of the fairness of the procedures that are used to implement them. Cty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998). Therefore, the substantive protections of the due process clause are intended to prevent government officials from abusing their power or employing it as an instrument of oppression. Lewis, 523 U.S. at 846. In order to state a cause of action for a deprivation of due process, a plaintiff must first identify a life, liberty, or property interest for which the protection is sought. Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Brittain v. Hansen, 451 F.3d 982, 991 (9th Cir. 2006).

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569–70 (1972). "[P]rocedural due process claims are resolved by balancing tests, where differing interests can give rise to many differing procedural requirements." Brittain, 451 F.3d at 1000. "(D)ue process is flexible and calls for such procedural protections as the particular situation demands." Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

"A party does not have a property interest if the party has a 'unilateral expectation' or an 'abstract desire or need for it.' " Calvillo Manriquez v. Devos, 345 F. Supp. 3d 1077, 1099–100

1    (N.D. Cal. 2018) (quoting Foss v. Nat'l Marine Fisheries Serv., 161 F.3d 584, 588 (9th Cir.

2    1998)).  "Where a regulation creates the alleged entitlement, the question is whether the benefit

3    is 'mandatory in nature.' " Id.  Thus, "[a]n individual asserting a loss of due process must show

4    that 'an existing law, rule, or understanding makes the conferral of benefit mandatory.' " Calvillo

5    Manriquez, 345 F. Supp. 3d at 1100 (quoting U.S. v. Guillen-Cervantes, 748 F.3d 870, 872 (9th

6    Cir. 2014)).

7         Depending on the circumstances, students may be entitled to some form of procedural

8    due process before grants, loans, scholarships, or other financial assistance is revoked.  See R.W.

9    v. Columbia Basin Coll., No. 4:18-CV-5089-RMP, 2019 WL 13201974, at *7 (E.D. Wash. Oct.

10   4, 2019) ("Although not briefed in the current motions for summary judgment, the school may

11   have deprived R.W. of his financial aid in violation of the Fourteenth Amendment Due Process

12   Clause. Prior to the trespass order, R.W. was receiving financial aid. He lost his financial aid

13   mid-year after CBC concluded that he had violated the Student Code of Conduct."), rev'd and

14   remanded, 842 F. App'x 153 (9th Cir. 2021); Austin v. Univ. of Oregon, 925 F.3d 1133, 1139

15   (9th Cir. 2019) ("We assume, without deciding, that the student athletes have property and

16   liberty interests in their education, scholarships, and reputation as alleged in the complaint.").

17        There are insufficient facts for the Court to determine if any property interest attached to

18   Plaintiff's financial aid such that Plaintiff was entitled a hearing.  It appears Plaintiff received

19   financial aid for one semester, did not comply with the SAP Policy, was ordered to return the

20   overpayment of funds due to noncompliance with the SAP policy, and then was unable to enroll

21   in the next semester of classes due to such overpayment of financial aid.  Plaintiff claims he was

22   entitled to a hearing, however, it is unclear what process Plaintiff actually received because the

23   complaint lacks sufficient factual details, and further, it does not appear Plaintiff would be

24   entitled to a hearing based on his allegations.

25        Based on the allegations, Plaintiff has not stated a claim for violation of his federal rights,

26   and under the relevant law, it does not appear Plaintiff would have a property right under the

27   facts as alleged that would entitle him to a hearing.  See Ryan v. Harlan, No. CV-10-626-ST,

28   2011 WL 711110, at *8–9 (D. Or. Feb. 22, 2011) ("Ryan received financial aid for one semester

on a contract that specifically noted it was only for one term.  Unlike the situation in Goldberg, there was nothing continuous about this one semester's worth of aid that would trigger a due process violation if terminated.  Ryan's application for student financial aid for the fall 2009 term was an initial application that was deficient according to the federal, state, and PSU financial aid eligibility requirements.  He had no recognized property interest in the termination of aid he never initially received.  Thus, Ryan was neither qualified for nor entitled to due process because he did not have a property interest in continuing financial aid."); Alston v. Pennsylvania State Univ., No. 1:14-CV-2480, 2015 WL 9660019, at *5 (M.D. Pa. June 9, 2015) (" 'The Higher Education Act does not create a property right entitled to due process protection in students like Robinette who seek federal financial aid to attend a community college," and 'no property right entitlement to federal financial assistance for students.' " (quoting Robinett v. Delgado Cmty. Coll., No. CIV.A.99-2545, 2000 WL 1720553, at *7 (E.D. La. Nov. 17, 2000))), report and recommendation adopted, No. 14-CV-02480, 2016 WL 74795 (M.D. Pa. Jan. 7, 2016), aff'd, 685 F. App'x 158 (3d Cir. 2017).

It does not appear that Plaintiff disputes he did not fulfill the requirements of the SAP Policy, stating in the complaint that "I was unsuccessful in completing all my courses according to [SAP Policy]" (Compl. 3).  See Holt v. Munitz, 87 F.3d 1319 (9th Cir. 1996) ("The purpose of the PRHF is to 'provide ... a program of grants to assist in making available the benefits of a post-baccaulareate education to graduate ... students who demonstrate financial need.' 20 U.S.C. § 1134d(a).  In light of this statute, it was reasonable for the defendants to request that Holt fill out the financial-aid forms and it is unreasonable for Holt to contend that he had any property interest in the fellowship funds absent proof of financial need.  Because Holt cannot establish that he had a property interest in receiving PRHF funds, he cannot establish that he was entitled to notice and a hearing under the due process clause.").  Courts looking to claims apparently similar to what Plaintiff is claiming in regards to failing to comply with a SAP Policy, have found no such property or liberty interest implicated:

> Plaintiff's references to a "federal right to a hearing and to SAP appeals" suggest possible claims under the Fourteenth Amendment. However, to establish either a procedural or

substantive due process claim under the Fourteenth Amendment, Plaintiff would first have to show that he had a constitutionally protected liberty or property interest. He provides no basis for his assertion that he was entitled to a hearing concerning the denial of financial aid for education, and the Court is unaware of any such right. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 37 (1973) (finding no fundamental right to education); *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) ("To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."); *see also Dozier v. Loop Coll.*, 776 F.2d 752, 753 (7th Cir. 1985) (finding "no right to college education at public expense") (internal citations omitted).

Mondragon v. Baruch Coll., No. 15-CV-7378 (DLI)(LB), 2018 WL 4689192, at *4 (E.D.N.Y. Sept. 28, 2018).[5]

There are insufficient facts to both determine whether Plaintiff had a protected property interest, and whether the process he was afforded was sufficient, in for example Plaintiff alleges he did complete some sort of written appeal process, but was not able to present oral arguments. See Robinett, 2000 WL 1720553, at *7 ("The record does not support [a claim that Delgado failed to hold a hearing on Robinett's financial aid disqualification] because Robinett fails to establish that he had a property interest [and] even if plaintiff had a property right and even if some of his due process claims had not prescribed, the undisputed facts establish that he received adequate process [as] [a]fter he was notified of his disqualification in 1995, Robinett filed a written appeal with Delgado's Financial Aid Office . . . [and] had the opportunity to explain why Delgado should make an exception in his case to its policy that students who exceeded 95 hours

---

[5] The Mondragon court also found the Higher Education Act did not provide a private right of action under Section 1983:

> In light of Plaintiff's allegation that he submitted a timely SAP appeal under Section 484 of the Higher Education Act, the Court also has considered whether this Act provides a basis for his claim to a hearing and an appeal that is enforceable under § 1983. It does not. *See Sanon v. Dep't of Higher Educ.*, 453 F. App'x 28, 29 (2d Cir. 2011) (finding that the Higher Education Act "does not provide student borrowers a private right of action to enforce its provisions.") (internal citations omitted); *see also Shevtsov v. Los Angeles Cmty. Coll. Dist.*, 185 F. App'x 644, 645 (9th Cir. 2006) ("The district court ... properly concluded that [the plaintiff] could not bring a 42 U.S.C. § 1983 claim based on an alleged violation of the Higher Education Act.") (internal citations omitted).

Mondragon, 2018 WL 4689192, at *4; see also Shevtsov v. Los Angeles Cmty. Coll. Dist., 185 F. App'x 644, 645 (9th Cir. 2006) ("The district court also properly concluded that Vladimir Shevtsov could not bring a 42 U.S.C. § 1983 claim based on an alleged violation of the Higher Education Act.").

1  (or, under the current policy, 99 hours) are disqualified from financial aid."), aff'd, 273 F.3d

2  1095 (5th Cir. 2001).

3        Accordingly, the Court concludes that Plaintiff has not stated a claim for violation of his

4  due process rights under the Fourteenth Amendment.

5        **E.    Eleventh Amendment Immunity**

6        While Plaintiff's complaint does not state a viable claim for the reasons explained above,

7  assuming arguendo he did, the Court provides information to the Plaintiff concerning the ability

8  to sue these Defendants in both their official and individual capacities.

9        Plaintiff does not sue the Fresno City College itself, which would have had Eleventh

10  Amendment immunity.  See Thomas, 2015 WL 13237069, at *2 ("Within California, the Ninth

11  Circuit has determined that Eleventh Amendment immunity extends to California community

12  college school districts.") (citations omitted); Young v. Reedley Cmty. Coll., No. 1:11-CV-590

13  GSA, 2012 WL 253213, at *4 (E.D. Cal. Jan. 26, 2012) ("Since Ninth Circuit law is clear,

14  Defendants RCC and SCCCD are entitled to Eleventh Amendment immunity for Plaintiff's

15  section 1983 and 1985 claims, as well as the policy and custom claim.").

16        Plaintiff does sue all Defendants in their individual *and* official capacities.  To the extent

17  the Defendants are sued in their official capacity they would also be immune under the Eleventh

18  Amendment as to monetary damages.  See Mitchell v. Los Angeles Cmty. Coll. Dist., 861 F.2d

19  198, 201–02 (9th Cir. 1988) ("We hold that, under California law, the district is a state entity that

20  possesses eleventh amendment immunity from the appellant's section 1981, 1983 and 1985

21  claims in damages and for injunctive relief.  Likewise, the individual defendants share in the

22  district's eleventh amendment immunity because they were sued in their official capacities.");

23  Grosz v. Lassen Cmty. Coll. Dist., 360 F. App'x 795, 799 (9th Cir. 2009) ("As stated above, the

24  District defendants have Eleventh Amendment immunity from § 1983 claims, and, thus,

25  plaintiffs may only proceed against Cissell on these claims."); Wasson v. Sonoma Cnty. Jr. Coll.

26  Dist., 4 F. Supp. 2d 893, 902 (N.D. Cal. 1997) ("Both parties acknowledge that the District is a

27  California community college district . . . all claims against the District and the Governing Board

28  are dismissed, without prejudice to refiling in state court.").

However, to the extent Plaintiff is requesting prospective injunctive relief by requesting this financial aid status be restored to good standing, the Defendants may be sued in their official capacity.  See Young v. Reedley Cmty. Coll., No. 1:11-CV-590 GSA, 2012 WL 253213, at *5 (E.D. Cal. Jan. 26, 2012) ("[O]ne exception to this rule is that the Eleventh Amendment does not bar suits for prospective declaratory or injunctive relief against state officials in their official capacity . . . Plaintiff has requested declarative and injunctive relief in addition to monetary damages [and] [t]herefore, Defendant's Motion to Dismiss Defendant Uribe in his official capacity is granted regarding Plaintiff's request for monetary damages, but is denied regarding Plaintiff's request for declaratory and injunctive relief."); see also Wasson, 4 F. Supp. 2d at 903 ("When a plaintiff sues a state official in his or her official capacity for a violation of federal constitutional or statutory law, the federal court may award an injunction governing the official's future conduct, but may not award retroactive monetary relief . . . [a] state official is not a person for purposes of § 1983 and may not be sued under § 1983 in his official capacity for damages, although he may be sued for injunctive relief.").

The Defendants, as sued in their individual capacities, can be liable for monetary damages.  See Wasson, 4 F. Supp. 2d at 902 ("The Eleventh Amendment does not bar federal court suits against a state officer in his individual capacity, regardless of the relief sought.").

However, for the reasons explained above, Plaintiff's complaint does not state a cognizable claim against any of the named Defendants.

### F.     Challenges to Constitutionality

For the reasons explained above, Plaintiff's complaint does not satisfy the requirements of Rule 8 or the requirements to state a claim under Section 1983.  Similarly, as to Plaintiff's challenge that Title IV or Title 34 is unconstitutional, Plaintiff's vague generalized challenge to the laws as a whole, do not state a cognizable claim.

When a plaintiff seeks to challenge a statute as unconstitutional there are two types of challenges: "facial challenges" and "as-applied" challenges.  "Facial challenges seek to have a statute declared unconstitutional on the face of the statute, and the "standard presents an extremely high bar because a plaintiff must show that the statute is unconstitutional *in all*

1   possible applications and situations." Isbelle v. Denney, No. 1:19-CV-00093-DCN, 2019 WL

2   5580951, at *2 (D. Idaho Oct. 29, 2019); see also S.D. Myers, Inc. v. City & Cnty. of San

3   Francisco, 253 F.3d 461, 467 (9th Cir. 2001) ("In order to prevail on this facial challenge to the

4   Ordinance, Myers must meet a high burden of proof; it must 'establish that no set of

5   circumstances exists under which the [Ordinance] would be valid. The fact that [the Ordinance]

6   might operate unconstitutionally under some conceivable set of circumstances is insufficient to

7   render it wholly invalid.' " (quoting U.S. v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95

8   L.Ed.2d 697 (1987))); Vanguard Med. Mgmt. Billing, Inc. v. Baker, No. EDCV 17-965-

9   GW(DTBX), 2018 WL 6137194, at *7 (C.D. Cal. July 2, 2018) ("Thus, the fact that a statute

10   'might operate unconstitutionally *under some circumstances* is not enough to render it invalid

11   against a facial challenge.' " (quoting City of Los Angeles, Calif. v. Patel, 576 U.S. 409, 409,

12   135 S. Ct. 2443, 2446, 192 L. Ed. 2d 435 (2015))). The standard was recently clarified as to a

13   vagueness challenged. See Helicopters for Agric. v. Cnty. of Napa, 384 F. Supp. 3d 1035, 1039

14   (N.D. Cal. 2019) ("Before Guerrero, plaintiffs mounting a facial challenge for vagueness had to

15   'establish that no set of circumstances exists under which the statute would be valid,' a high bar .

16   . . [however] [o]ur court of appeals found that two Supreme Court decisions . . . expressly

17   rejected the 'no set of circumstances' test in the void for vagueness context.") (citations omitted).

18       The Court therefore finds Plaintiff's vague challenge to the entirety of the statutory

19   schemes underlying Title IV and Title 34, do not present a cognizable facial constitutional

20   challenge.

21       Additionally, Plaintiff's vague challenge to the entirety of the statutory schemes

22   underlying Title IV and Title 34, do not present a cognizable as-applied constitutional challenge

23   for purposes of Rule 8. "As-applied challenges, on the other hand, do not look at the text, or

24   face, of the statute, but rather argue that even if a law is valid on its face, it may nonetheless—as

25   the name suggests—be unconstitutionally applied. Isbelle, 2019 WL 5580951, at *2. "The

26   question in an as-applied challenge is whether the statute is unconstitutional when applied in a

27   particular case," and therefore, [s]pecific facts are critical." Id. (citations omitted). Here, as the

28   Court found above, Plaintiff has not provided sufficient facts to satisfy the pleading requirements

1  of Rule 8, and for the same reason finds Plaintiff has not stated a cognizable as-applied

2  challenge.  See Wal-Mart Stores, Inc. v. City of Turlock, 483 F. Supp. 2d 987, 996–97 (E.D. Cal.

3  2006) ("When faced with a claim that application of a statute renders it unconstitutional, a court

4  must analyze the statute as applied to the particular case, *i.e.,* how it operates in practice against

5  the particular litigant and under the facts of the instant case, not hypothetical facts in other

6  situations."); Dairy v. Bonham, No. C-13-1518 EMC, 2013 WL 3829268, at *5 n.3 (N.D. Cal.

7  July 23, 2013) )"[T]o make an 'as applied' challenge a plaintiff must allege specific facts

8  regarding application of the challenged law.").

9        Accordingly, for all of the above reasons, the Court finds Plaintiff's complaint does not

10  state a cognizable claim for violation of Plaintiff's federal rights.  The Court shall grant Plaintiff

11  leave to file an amended complaint.

12                                        **IV.**

13                              **CONCLUSION AND ORDER**

14        Based on the foregoing, Plaintiff's complaint fails to state a cognizable claim for relief.

15  The Court will grant Plaintiff an opportunity to amend the complaint to cure the above-identified

16  deficiencies to the extent Plaintiff is able to do so in good faith.  Lopez v. Smith, 203 F.3d 1122,

17  1130 (9th Cir. 2000).

18        Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what

19  each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal,

20  556 U.S. at 678-79.  Although accepted as true, the "[f]actual allegations must be [sufficient] to

21  raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations

22  omitted).  Additionally, Plaintiff may not change the nature of this suit by adding new, unrelated

23  claims in his first amended complaint.  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no

24  "buckshot" complaints).

25        Plaintiff is advised that an amended complaint supersedes the original complaint.  Lacey

26  v. Maricopa Cnty., 693 F.3d 896, 927.  Therefore, Plaintiff's first amended complaint must be

27  "complete in itself without reference to the prior or superseded pleading."  Local Rule 220.

28  Plaintiff's first amended complaint must be filed within thirty (30) days, and is subject to the

1 | twenty-five (25) page limit set forth above.

2 |      Based on the foregoing, IT IS HEREBY ORDERED that:

3 |     1.    The Clerk of the Court shall send Plaintiff a civil rights complaint form;

4 |     2.    Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a

5 | first amended complaint curing the deficiencies identified by the Court in this

6 | order;

7 |     3.    The first amended complaint, including attachments, shall not exceed twenty-five

8 | (25) pages in length; and

9 |     4.    <u>If Plaintiff fails to file a first amended complaint in compliance with this order,</u>

10 | <u>the Court will recommend to the district judge that this action be dismissed, with</u>

11 | <u>prejudice, for failure to obey a court order, failure to prosecute, and for failure to</u>

12 | <u>state a claim.</u>

13 |

14 | IT IS SO ORDERED.

15 | Dated:   **May 10, 2023**

16 |           UNITED STATES MAGISTRATE JUDGE

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |