# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALCAPONE ALO,<br><br>          Plaintiff,<br><br>     v.<br><br>CAROLE GOLDSMITH, et al.,<br><br>          Defendants. | Case No. 1:23-cv-00536-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING ACTION FOR FAILURE TO STATE A CLAIM, FOR FAILURE TO COMPLY WITH COURT ORDE, AND FAILURE TO PROSECUTE<br><br>ORDER DIRECTING CLERK OF COURT TO RANDOMLY ASSIGN DISTRICT JUDGE<br><br>(ECF Nos. 1, 7)<br><br>**OBJECTIONS DUE WITHIN 14 DAYS** |

## I.

## INTRODUCTION AND BACKGROUND

Alcapone Alo ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed this action on April 6, 2023.  (ECF No. 1.)  The Court initially denied Plaintiff's *in forma pauperis* application, and later granted *in forma pauperis* status on April 13, 2023, based on a long form application. (ECF Nos. 3, 4, 6.)  On May 10, 2023, the Court screened Plaintiff's complaint and found it did not state a cognizable claim.  (ECF No. 7.)  The order was served on Plaintiff by postal mail and contained notice that Plaintiff was required to file an amended complaint within thirty (30) days. (Id.)  The order further notified Plaintiff that if "[i]f Plaintiff fails to file a first amended

<u>complaint in compliance with this order,</u> <u>the Court will recommend to the district judge that this</u> <u>action be dismissed, with</u> <u>prejudice, for failure to obey a court order, failure to prosecute, and for</u> <u>failure to</u> <u>state a claim.</u>"  (<u>Id.</u> at 22 (emphasis in original).)

Plaintiff did not file an amended complaint by the deadline to do so, and did not otherwise respond to the Court's order or file any additional documents with the Court. Accordingly, the Court issues these findings and recommendations recommending that Plaintiff's complaint be dismissed for failure to state a cognizable claim, and recommending this action be dismissed for failure to prosecute and failure to comply with the Court's order.

## II.

### SCREENING REQUIREMENT

Notwithstanding any filing fee, the court shall dismiss a case if at any time the Court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2); <u>see</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1129 (9th Cir. 2000) (section 1915(e) applies to all *in forma pauperis* complaints, not just those filed by prisoners); <u>Calhoun v. Stahl</u>, 254 F.3d 845 (9th Cir. 2001) (dismissal required of *in forma pauperis* proceedings which seek monetary relief from immune defendants); <u>Cato v. United States</u>, 70 F.3d 1103, 1106 (9th Cir. 1995) (district court has discretion to dismiss *in forma pauperis* complaint under 28 U.S.C. § 1915(e)); <u>Barren v. Harrington</u>, 152 F.3d 1193 (9th Cir. 1998) (affirming sua sponte dismissal for failure to state a claim).  The Court exercises its discretion to screen the plaintiff's complaint in this action to determine if it "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."

1  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S.
2  544, 555 (2007)).

3       In reviewing the *pro se* complaint, the Court is to liberally construe the pleadings and
4  accept as true all factual allegations contained in the complaint.  Erickson v. Pardus, 551 U.S. 89,
5  94 (2007).  Although a court must accept as true all factual allegations contained in a complaint,
6  a court need not accept a plaintiff's legal conclusions as true.  Iqbal, 556 U.S. at 678.  "[A]
7  complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops
8  short of the line between possibility and plausibility of entitlement to relief.' "  Id. (quoting
9  Twombly, 550 U.S. at 557).  Therefore, the complaint must contain sufficient factual content for
10 the court to draw the reasonable conclusion that the defendant is liable for the misconduct
11 alleged.  Iqbal, 556 U.S. at 678.

12                                      **III.**

13                          **COMPLAINT ALLEGATIONS**

14      The Court accepts Plaintiff's allegations in the complaint as true *only* for the purpose of
15 the *sua sponte* screening requirement under 28 U.S.C. § 1915.

16      Plaintiff names all Defendants in their individual and official capacities.  Plaintiff first
17 names as a Defendant Dr. Carole Goldsmith, identified as a District Chancellor.  Plaintiff then
18 names four persons under the heading "Governing Board": (1) Nasreen Johnson, President; (2)
19 Magdalena Gomez, Vice President; (3) Danielle Parra, Secretary; and (4) Richard M. Caglia,
20 Trustee.  Plaintiff then names the following Defendants under the heading "Financial Aid
21 Office": (1) Sylvia Cuevas, Manager of Financial Aid; (2) Mikki Johnson, Director of Financial
22 Aid; and (3) other unknown members of the Financial Aid Committee.  Plaintiff then names Dr.
23 Robert Pimentel, President of Fresno City College, and Lataria Halls, Vice President of Fresno
24 City College.

25      Plaintiff alleges that on January 6, 2022, Plaintiff attended the Spring term at Fresno City
26 College with the intention of becoming an auto mechanic.  (Compl. 3.)  Plaintiff attempted to
27 complete 12 units, but was unsuccessful in completing all courses according to 20 U.S.C. 1091
28 standards and institution satisfaction.  Plaintiff refers to a S.C.C.C.D. SAP Policy ("SAP

Policy").  On June 1, 2022, Plaintiff received an email from the financial aid office indicating a decision had been made after reviewing his file, and that informed Plaintiff that the school was placing him on a financial aid warning status due to not meeting the program satisfaction and SAP Policy.  While he was placed on the warning status, Plaintiff states the SAP Policy requirements allow the student to meet with a financial aid specialist counselor to map out an academic plan, and then the responsibility would rest on the student to execute such plan. Plaintiff states that prior to the committee's decisions, he was not given the opportunity defend, and not given an opportunity to present his argument and evidence orally.

On August 13, 2022, Plaintiff filed an appeal.  Plaintiff was told to fill out the forms, turn it in, and wait for the decision to be made.  On September 12, 2022, the appeal was denied stating Plaintiff was not meeting the requirements specified in the SAP Policy.

On December 7, 2022, the financial aid office emailed Plaintiff with a 2021-2022 Referral Notification Letter, stating they had referred debt to the U.S. Department of Education, Debt Resolution Division.  When attempting to register for the 2022-2023 term, Plaintiff states the "Holder of Overpayment Debt" (the Fresno City College/Financial Aid Office), was preventing him from registering for courses due to overpayment that had been referred to the secretary in accordance with 34 CFR 690.79(c))  Plaintiff avers that after referring payments to the secretary, the institution need make no further effort to recover overpayments after complying with 34 CFR 690.79(b)(2)).

Plaintiff states Defendants are authorized under "C.F.R. Title 34 Education to statutorily deprive a student of the right to a **'Protected Property Interest' afforded by the 14th [A]mendment** without regards to some form of hearing," and "[n]othing stated within the codes on providing a hearing to students that have been or will be deprived of this right," and Plaintiff is certain that students before and after him will suffer the same consequences.  (Compl. 3.)

Plaintiff brings three claims.  First, Plaintiff claims a violation of the Due Process Clause under the Fifth and Fourteenth Amendments, based on Defendants' failure to provide a proposed termination and pre-termination hearing prior to terminating "Title IV/Public Benefits . . . within

4

the meaning of 8 U.S.C. [§] 1611(c)1."[1]  Plaintiff claims that between August 23, 2022, until September 12, 2022, Plaintiff was deprived of the right to be heard and right to be present his argument orally, and proffers that written submission does not constitute oral argument because it is not an effective means to communicate with the decision maker.  (Compl. 4.)

Plaintiff's second claim is for "conspiracy to deprivation of rights under color of law and 'custom and usage.' "  (Compl. 4.)  Here, Plaintiff states that the Governing Board and District Chancellor "had the opportunity & the authority to prohibit its employees from continuously violating my right to be heard," and that "[t]he 'Board' was also aware of the situation because I sent them a copy of my complaint demanding to be heard but failed to conduct a hearing."  (Compl. 4.)

Plaintiff's third claim is "challenging the constitutionality of statute at large, C.F.R. Title 34 Education, & S.C.C.C.D. SAP Policy."  (Compl. 4.)  Here, Plaintiff states that "[w]hile providing hearings are not required for some benefits, Title IV have echoed amongst high courts as a 'Protected Property Interest' within the meaning of 'Life, Liberty, & Property' specified in [the] 14th [A]mendment.  Therefore, statute at large, C.F.R. Title 34 Education, & S.C.C.C.D. SAP Policy lacks the meaning of due process."  (Compl. 4.)

By way of relief, Plaintiff requests that: (1) a preliminary injunction ordering the Defendants to restore the Plaintiff's financial aid status to good standing, waiving any allegedly owed fees and debt; (2) $500.00 per Defendant, in damages pursuant to 42 U.S.C. § 1983; and (3) $3,000.00 for mental and emotional distress caused by the denial of due process.  (Compl. 4.)

/ / /

/ / /

/ / /

---

[1]  Plaintiff does not refer to his citizenship or residency status as related to the denial of his financial aid.  The cited provision is entitled "Aliens who are not qualified aliens ineligible for Federal public benefits," and provides in one regard that "[n]otwithstanding any other provision of law and except as provided in subsection (b), an alien who is not a qualified alien (as defined in section 1641 of this title) is not eligible for any Federal public benefit (as defined in subsection (c))," and also provides that such subsection does not apply to a number of  statutorily excepted categories of "Federal public benefits," including medical assistance under Title XIX of the Social Security Act.  8 U.S.C. § 1611(a)-(b)(1)(A).  Further, "Federal public benefit" is defined to include "any . . . postsecondary education . . . or any other similar benefit for which payments or assistance are provided to an individual . . . by an agency of the United States or by appropriated funds of the United States."  8 U.S.C. § 1611(c)(1)(B).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.

## DISCUSSION

For the reasons explained in the Court's screening order and reiterated below, Plaintiff's complaint fails to state a cognizable claim.  Plaintiff was provided the opportunity to file an amended complaint to attempt to correct the deficiencies at issue, but Plaintiff did not do so by the deadline.  For the reasons explained below, the Court recommends this action be dismissed for failure to state a claim, and for failure to prosecute and obey the order of the Court.

### A.      Federal Rule of Civil Procedure 8

Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (citation and internal quotation marks omitted).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678 (citation omitted).  This is because, while factual allegations are accepted as true, legal conclusions are not.  Id.; see also Twombly, 550 U.S. at 556-57; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).  Therefore, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

As currently pled, Plaintiff's complaint does not contain enough factual details to permit the Court to draw the reasonable inference that any named Defendants are liable for any misconduct alleged.  Iqbal, 556 U.S. at 678.  Plaintiff does not state any specific actions that any named Defendants took relating to any alleged misconduct.  Plaintiff does not mention any of the individual Defendants again after naming them as Defendants, and the only time Plaintiff uses a term other than generally referring to all "Defendants," is under the second claim for conspiracy,

1    where Plaintiff alleges that the Governing Board generally, and the District Chancellor, "had the
2    opportunity & the authority to prohibit its employees from continuously violating my right to be
3    heard," and mentions the "Board" was aware of the situation because he sent them of a copy of
4    his complaint requesting a hearing.  Plaintiff makes no specific allegation explaining when or
5    how communications were made to any specific Defendants on the dates provided.  Plaintiff only
6    vaguely states he filed an appeal and that the appeal was denied.  Plaintiff does not describe who
7    the appeal was made to, or the basis of the appeal.

8        Plaintiff's complaint fails to give fair notice of all of the allegations and claims directed
9    against the Defendants.  For these reasons, Plaintiff's complaint does not comply with the
10   requirements of Rule 8(a)(2).

11       **B.    Linkage Requirement under Section 1983 and Supervisory Liability**

12       For the same reasons explained in the previous section, Plaintiff also fails to establish an
13   adequate link between the actions of any named Defendant and the constitutional injury.  Section
14   1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal
15   rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th
16   Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v.
17   Williams, 297 F.3d 930, 934 (9th Cir. 2002).  The statute provides:

18           Every person who, under color of [state law] ... subjects, or causes to be
19           subjected, any citizen of the United States ... to the deprivation of any rights,
             privileges, or immunities secured by the Constitution ... shall be liable to the party
20           injured in an action at law, suit in equity, or other proper proceeding for redress.

21   42 U.S.C. § 1983.  "Section 1983 is not itself a source of substantive rights, but merely provides
22   a method for vindicating federal rights elsewhere conferred."  Crowley v. Nevada ex rel. Nevada
23   Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 393-
24   94 (1989)) (internal quotation marks omitted).  The statute requires that there be an actual
25   connection or link between the actions of the defendants and the deprivation alleged to have been
26   suffered by Plaintiff.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode,
27   423 U.S. 362 (1976).  Thus, to state a claim, Plaintiff must allege facts demonstrating the
28   existence of a link, or causal connection, between each Defendant's actions or omissions and a

1   violation of his federal rights.  Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062,

2   1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).  The Ninth

3   Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right,

4   within the meaning of section 1983, if he does an affirmative act, participates in another's

5   affirmative acts or omits to perform an act which he is legally required to do that causes the

6   deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

7        Thus, there is no *respondeat superior* liability under section 1983, and therefore, each

8   defendant is only liable for his or her own misconduct.  Iqbal, 556 U.S. at 677.  To state a claim,

9   Plaintiff must demonstrate that each defendant personally participated in the deprivation of his

10  rights.  Jones, 297 F.3d at 934.  In other words, to state a claim for relief under § 1983, Plaintiff

11  must link each named defendant with some affirmative act or omission that demonstrates a

12  violation of his federal rights.

13       Plaintiff vaguely refers a claim of conspiracy in the complaint.  In the context of

14  conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to

15  support the existence of a conspiracy among the defendants."  Buckey v. County of Los Angeles,

16  968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d

17  621, 626 (9th Cir. 1988).  Plaintiff must allege that defendants conspired or acted jointly in

18  concert and that some overt act was done in furtherance of the conspiracy.  Sykes v. California,

19  497 F.2d 197, 200 (9th Cir. 1974).

20       A conspiracy claim brought under section 1983 requires proof of "an agreement or

21  meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th

22  Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-

23  41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional right, Hart v.

24  Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma,

25  866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the conspiracy need not

26  know the exact details of the plan, but each participant must at least share the common objective

27  of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

28       Plaintiff's complaint contains insufficient factual allegations to state a claim pursuant to

Section 1983.[2]

## C.   Clarification of Plaintiff's Allegations and Legal Challenges

It is unclear as to certain policies and terms Plaintiff refers to in the complaint, and the Court turns to clarify some background information underlying Plaintiff's allegations, as to explain further the reasoning behind the Court's finding the complaint is insufficient under Rule 8 and to establish liability under Section 1983, as the Court found in the previous subsections.  It is also helpful to engage in this discussion before turning to the legal standards applicable to due process challenges generally and specifically as to educational financial aid.

It appears Plaintiff generally refers to and challenges the constitutionality of C.F.R. Title 34, as related to the requirements of Title IV.  "Title IV of the Higher Education Act was established 'to assist in making available the benefits of postsecondary education to eligible students...in institutions of higher education,' and authorizes federal student financial aid programs, such as Pell Grants, 20 U.S.C. § 1070a, and federal work-study programs."  Oakley v. Devos, No. 20-CV-03215-YGR, 2020 WL 3268661, at *4 (N.D. Cal. June 17, 2020) (citations

---

[2]  Plaintiff also refers to "custom and usage" in the complaint.  To the extent Plaintiff is attempting to establish liability based on a custom or policy, Plaintiff has failed to show an underlying constitutional violation, nor a policy that was the moving force behind such alleged violation, aside from vaguely asserting that "students before and after have and will suffer the same consequences."  (Compl. 3.)  A local government unit may only be held liable if it inflicts the injury complained of through a policy or custom.  Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010).  Generally, to establish municipal liability, the plaintiff must show that a constitutional right was violated, the municipality had a policy, that policy was deliberately indifferent to plaintiff's constitutional rights, and the policy was "the moving force" behind the constitutional violation.  Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 400 (1997); Burke v. County of Alameda, 586 F.3d 725, 734 (9th Cir. 2009); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1185-86 (9th Cir. 2002).  "The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.' "  Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)).  There can be no municipal liability without an underlying constitutional violation.  Scott v. Henrich, 39 F.3d 912, 916 (9th Cir. 1994).  A Monell claim can proceed under three theories of municipal liability: "(1) when official policies or established customs inflict a constitutional injury; (2) when omissions or failures to act amount to a local government policy of deliberate indifference to constitutional rights; or (3) when a local government official with final policy-making authority ratifies a subordinate's unconstitutional conduct."  Brown v. Contra Costa Cty., No. C 12-1923 PJH, 2014 WL 1347680, at *8 (N.D. Cal. Apr. 3, 2014) (citing Clouthier v. Cty. of Contra Costa, 591 F.3d 1232, 1249-50 (9th Cir. 2010)).  Whichever theory is alleged, the plaintiff must plead facts showing that "the policy is the moving force behind the constitutional violation."  Dougherty v. City of Covina, 654 F.3d 892, 900-01 (9th Cir. 2011); see also City of Oklahoma v. Tuttle, 471 U.S. 808, 823 (1985) ("At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged.").  Further, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."  Tuttle, 471 U.S. at 823-24.

1    omitted).

2        Plaintiff's complaint identifies 20 U.S.C. 1091.  Plaintiff doesn't specifically assert which

3    provision of the statute he is relying on.  Plaintiff's complaint does not establish what type or

4    what amount of financial aid Plaintiff received.  The complaint does not, for example, specify

5    whether Plaintiff received grants, a loan, or work assistance.

6        The Court shall excerpt the general provisions pertaining to receiving a grant, loan, or

7    work assistance, and the portion of the law pertaining to satisfactory progress:

8    
9        In order to receive any grant, loan, or work assistance under this subchapter, a student must—

10       **(1)** be enrolled or accepted for enrollment in a degree, certificate, or other program (including a program of study abroad approved
11   for credit by the eligible institution at which such student is enrolled) leading to a recognized educational credential at an
12   institution of higher education that is an eligible institution in accordance with the provisions of section 1094 of this title, except
13   as provided in subsections (b)(3) and (b)(4), and not be enrolled in an elementary or secondary school;

14       **(2)** if the student is presently enrolled at an institution, be maintaining satisfactory progress in the course of study the student
15   is pursuing in accordance with the provisions of subsection (c);

16       **(3)** not owe a refund on grants previously received at any institution under this subchapter, or be in default on any loan from
17   a student loan fund at any institution provided for in part E, or a loan made, insured, or guaranteed by the Secretary under this
18   subchapter for attendance at any institution; . . .

19       **(5)** be a citizen or national of the United States, a permanent resident of the United States, or able to provide evidence from the
20   Immigration and Naturalization Service that he or she is in the United States for other than a temporary purpose with the intention
21   of becoming a citizen or permanent resident; and

22       **(6)** if the student has been convicted of, or has pled nolo contendere or guilty to, a crime involving fraud in obtaining funds
23   under this subchapter, have completed the repayment of such funds to the Secretary, or to the holder in the case of a loan under this
24   subchapter obtained by fraud. . . .

25       . . . **(c) Satisfactory progress**
    **(1)** For the purpose of subsection (a)(2), a student is maintaining
26   satisfactory progress if—

27       **(A)** the institution at which the student is in attendance, reviews the progress of the student at the end of each academic year, or its
28   equivalent, as determined by the institution, and

> **(B)** the student has a cumulative C average, or its equivalent or academic standing consistent with the requirements for graduation, as determined by the institution, at the end of the second such academic year.

20 U.S.C. § 1091(a)-(c).[3]

Thus, in part, Title IV is restricted as follows:

> [T]he following categories of students, among others, are not eligible for title IV assistance: (a) Dreamers with or without Deferred Action for Childhood Arrival status; (b) other students with undocumented status; (c) students with pending asylum applications; (d) students with Temporary Protected Status or Deferred Enforced Departure status; and (e) students with U-visas. Among citizens and non-citizens alike, title IV also excludes from eligibility students who: (a) do not have a high school diploma, General Education Development certificate or equivalent, or recognized exception to these requirements; (b) are enrolled only in non-credit courses; (c) have not registered with Selective Service (males 18-25); (d) are also enrolled in high school; (e) have not maintained a "C" average or above by the end of their second year; or (f) are in default on a federal student loan or owe any refund amount on a federal student grant.

Oakley, 2020 WL 3268661, at *4 (citations omitted).

It appears "SCCCD" refers to State Center Community College District. See Richardson-Bass v. State Ctr. Cmty. Coll. Dist., No. 19-CV-01566-AWI-SAB, 2020 WL 5658225, at *1 (E.D. Cal. Sept. 23, 2020) ("The public entity that operates and controls [Fresno City College] is Defendant State Center Community College District ('SCCCD')."); Thomas v. Fresno City Coll., No. 115CV00826DADBAM, 2016 WL 1572739, at *1 (E.D. Cal. Apr. 19,

---

[3] Plaintiff also cites to 34 C.F.R. 690.7(b)(2) and (c). It is not clear the significance of the citation. The regulation pertains to instances where an institution becomes ineligible to participate in the grant or loan program:

> (b) If an institution becomes ineligible to participate in the Federal Pell Grant Program during an award year, an eligible student who was attending the institution and who submitted a valid SAR to the institution, or for whom the institution obtained a valid ISIR, before the date the institution became ineligible is paid a Federal Pell Grant for that award year for—
> (1) The payment periods that the student completed before the institution became ineligible; and
> (2) The payment period in which the institution became ineligible.
> (c)(1) If an institution loses its eligibility to participate in the Direct Loan program under the provisions of subpart M or N of 34 CFR part 668, it also loses its eligibility to participate in the Federal Pell Grant Program for the same period of time.
> (2) That loss of eligibility must be in accordance with the provisions of 34 CFR 668.187(d) or 668.206(d).

34 C.F.R. § 690.7(b)-(c).

1  2016).

2      It appears that the SAP Policy is a "satisfactory academic progress" policy.  See

3  Crawford v. San Diego City Cmty. Coll., No. 18CV0831, 2018 WL 3629901, at *2 (S.D. Cal.

4  July 31, 2018).  "Colleges that participate in federal student loan programs are required to

5  maintain policies for satisfactory academic progress, and to confirm that students who are

6  otherwise eligible for student aid under the Higher Education Act are making satisfactory

7  academic progress under those policies."  Id. ("As required under these regulations, City College

8  maintains a policy which outlines the school's standards for maintaining satisfactory academic

9  progress and provides reasons which may result in a student's disqualification from financial

10  aid." (citing 34 C.F.R. §§ 668.16(e), 668.32(f), & 668.34)); see also Calisesi ex rel. U.S. v. Hot

11  Chalk, Inc., No. CV-13-01150-PHX-NVW, 2015 WL 1966463, at *7 (D. Ariz. May 1, 2015)

12  ("In order for an institution to participate in a Title IV, Higher Education Act program, i.e.,

13  become an 'eligible institution,' the institution must enter into a written Program Participation

14  Agreement with the Secretary of the Department of Education and agree that it will comply with

15  all statutes of or applicable to Title IV and all applicable regulations prescribed under Title IV.").

16      The Fresno City College website contains the following information pertaining to its

17  SAP Policy:

18          Satisfactory Academic Progress (SAP) Policy

19          You must meet three requirements to be considered to be making
            Satisfactory Academic Progress in order to receive financial aid.
20

21          1. Maintain a minimum cumulative Grade Point Average (GPA) of
            2.0. This is the Qualitative Measure. A, B, C, D, RD, and F grades
22          are used to calculate a student's GPA. Transferable units from prior
            colleges are not included in the GPA calculation. (If all classes are
23          taken on a credit/non-credit basis, the GPA requirement will not
            apply).

24          2. Receive credit for at least 67% of the total units attempted.
25          This is the Quantitative Measure (Pace of Progression).
            Withdrawals (W), Incompletes (I or IP), No Credit (N, NC or NP),
26          Report Delay (RD) and Failing (F) grades are considered units
            attempted.

27          3. Have attempted less than 150% of the maximum cumulative
            units required for completion of their program. This is the
28          Maximum Timeframe.

1    See         https://www.fresnocitycollege.edu/admissions-aid/financial-aid-office/financial-aid-rules

2    .html (last accessed May 8, 2023).[4]  The college website also provides the following information

3    concerning withdrawal of financial aid and return of Title IV funds:

4               Withdrawals and Return of Title IV Funds Policy

5               Title IV funds are awarded to a student under the assumption that
               the student will attend school for the entire period for which the
6               financial aid is awarded. When a student withdraws from all
               classes, the financial aid award amount for the student is affected.
7               When a student receives a combination of F/W/I/RDs or all
               F/I/RDs, we must treat it as if the student stopped attending all
8               classes. If there are any grade changes it is the student's
               responsibility to notify the Financial Aid Office prior to September
9               30th of the next school year.

10              According to Federal Student Aid regulations:

11              When a student fails to begin attendance in all classes but receives
               financial aid, the entire amount must be returned. The student is
12              considered a "no show". The institution will return all federal
               funds disbursed to the student back to the Department of
13              Education, and the student will be billed the amount returned.

14              When a student withdraws before completing more than 60% of
               the term, the student may no longer be eligible for the full amount
15              of Title IV funds that the student was originally scheduled to
               receive. The financial aid office will perform a return of funds
16              calculation to determine how much the institution and the student
               must return. If the institution is required to return funds on the
17              student's behalf, the student will be billed and a hold will be
               placed on the student's account, which will prevent students from
18              registering from classes and obtaining academic transcripts.

19              When a student withdraws after completing more than 60% of the
               term, the student will not owe any repayment to the institution or
20              the Department of Education. The student has earned 100% of the
               financial aid received.

21
               When a student withdraws and the return of Title IV funds
22              calculation performed indicates that a student has not received all
               financial aid entitled to, it is called a post-withdrawal
23              disbursement. Our office will notify you by email.

24   See         https://www.fresnocitycollege.edu/admissions-aid/financial-aid-office/financial-aid-

25   _____
     [4]  Although not determinative to the Court's screening decision here, the Court finds it prudent to refer to this
26   information in order to clarify the information contained in Plaintiff's complaint, which was insufficient.  See
     United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it
27   may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document
     forms the basis of the plaintiff's claim.").  The Court finds the SAP Policy and other information concerning Title IV
28   funds and agreements between students and the college, form the basis of Plaintiff's claims as proffered in the
     complaint.

rules.html (last accessed May 8, 2023).  The Fresno City College website also contains a "Terms of Agreement," outlining the terms applicable when a student accepts financial aid:

> Terms of Agreement
>
> Upon acceptance of financial aid (cashing a check or accepting direct deposit), I hereby certify that:
>
> I will enroll in an eligible program and attend classes at one (or more) of the campuses/centers through State Center Community College District.
>
> I understand that my financial aid award is subject to change according to my enrollment status.
>
> I understand that if repayment is required, I will be ineligible to receive any additional grant money until repayment is complete. I understand that under repayment or default status, academic transcripts will not be released to other institutions.
>
> I have read SCCCD's Financial Aid Satisfactory Academic Progress Policy and understand I must meet these standards in order to continue receiving financial aid.
>
> I will promptly answer all letters related to my financial aid.
>
> I will notify the Financial Aid Office if I change financial aid unit status, change attending institution or enroll in more than one institution.
>
> I realize payment of EOPS or OASIS funds are contingent upon compliance with all applicable guidelines.
>
> I realize I must be in the proper number of units approximately ten days before check disbursement date in order to receive my financial aid and I understand that I may NOT be paid for short-term or wait-list classes until officially enrolled in and actually attending them.
>
> I agree to repay any funds disbursed to me in error, or for any period of time I was not eligible to receive funding or was not enrolled.
>
> I also understand that any fees owed to the institution will be subtracted from my financial aid check unless alternate payment arrangements have been made with the Campus Business Office.

See        https://www.fresnocitycollege.edu/admissions-aid/financial-aid-office/financial-aid-rules.html (last accessed May 8, 2023).

/ / /

/ / /

14

**D.      Insufficient Facts to State Due Process Claim**

The Due Process Clause of the Fourteenth Amendment protects two distinct but related rights: procedural due process and substantive due process.  Albright v. Oliver, 510 U.S. 266, 272 (1994).  The substantive protections of the due process clause bar certain governmental actions regardless of the fairness of the procedures that are used to implement them.  Cty. of Sacramento v. Lewis, 523 U.S. 833, 840 (1998).  Therefore, the substantive protections of the due process clause are intended to prevent government officials from abusing their power or employing it as an instrument of oppression.  Lewis, 523 U.S. at 846.  In order to state a cause of action for a deprivation of due process, a plaintiff must first identify a life, liberty, or property interest for which the protection is sought.  Wilkinson v. Austin, 545 U.S. 209, 221 (2005); Brittain v. Hansen, 451 F.3d 982, 991 (9th Cir. 2006).

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 569–70 (1972).  "[P]rocedural due process claims are resolved by balancing tests, where differing interests can give rise to many differing procedural requirements."  Brittain, 451 F.3d at 1000.  "(D)ue process is flexible and calls for such procedural protections as the particular situation demands."  Mathews v. Eldridge, 424 U.S. 319, 334 (1976) (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).

"A party does not have a property interest if the party has a 'unilateral expectation' or an 'abstract desire or need for it.' "  Calvillo Manriquez v. Devos, 345 F. Supp. 3d 1077, 1099–100 (N.D. Cal. 2018) (quoting Foss v. Nat'l Marine Fisheries Serv., 161 F.3d 584, 588 (9th Cir. 1998)).  "Where a regulation creates the alleged entitlement, the question is whether the benefit is 'mandatory in nature.' "  Id.  Thus, "[a]n individual asserting a loss of due process must show that 'an existing law, rule, or understanding makes the conferral of benefit mandatory.' "  Calvillo Manriquez, 345 F. Supp. 3d at 1100 (quoting U.S. v. Guillen-Cervantes, 748 F.3d 870, 872 (9th Cir. 2014)).

Depending on the circumstances, students may be entitled to some form of procedural due process before grants, loans, scholarships, or other financial assistance is revoked.  See R.W.

v. Columbia Basin Coll., No. 4:18-CV-5089-RMP, 2019 WL 13201974, at *7 (E.D. Wash. Oct. 4, 2019) ("Although not briefed in the current motions for summary judgment, the school may have deprived R.W. of his financial aid in violation of the Fourteenth Amendment Due Process Clause. Prior to the trespass order, R.W. was receiving financial aid. He lost his financial aid mid-year after CBC concluded that he had violated the Student Code of Conduct."), rev'd and remanded, 842 F. App'x 153 (9th Cir. 2021); Austin v. Univ. of Oregon, 925 F.3d 1133, 1139 (9th Cir. 2019) ("We assume, without deciding, that the student athletes have property and liberty interests in their education, scholarships, and reputation as alleged in the complaint.").

There are insufficient facts for the Court to determine if any property interest attached to Plaintiff's financial aid such that Plaintiff was entitled a hearing. It appears Plaintiff received financial aid for one semester, did not comply with the SAP Policy, was ordered to return the overpayment of funds due to noncompliance with the SAP policy, and then was unable to enroll in the next semester of classes due to such overpayment of financial aid. Plaintiff claims he was entitled to a hearing, however, it is unclear what process Plaintiff actually received because the complaint lacks sufficient factual details, and further, it does not appear Plaintiff would be entitled to a hearing based on his allegations.

Based on the allegations, Plaintiff has not stated a claim for violation of his federal rights, and under the relevant law, it does not appear Plaintiff would have a property right under the facts as alleged that would entitle him to a hearing. See Ryan v. Harlan, No. CV-10-626-ST, 2011 WL 711110, at *8–9 (D. Or. Feb. 22, 2011) ("Ryan received financial aid for one semester on a contract that specifically noted it was only for one term. Unlike the situation in Goldberg, there was nothing continuous about this one semester's worth of aid that would trigger a due process violation if terminated. Ryan's application for student financial aid for the fall 2009 term was an initial application that was deficient according to the federal, state, and PSU financial aid eligibility requirements. He had no recognized property interest in the termination of aid he never initially received. Thus, Ryan was neither qualified for nor entitled to due process because he did not have a property interest in continuing financial aid."); Alston v. Pennsylvania State Univ., No. 1:14-CV-2480, 2015 WL 9660019, at *5 (M.D. Pa. June 9, 2015)

1  (" 'The Higher Education Act does not create a property right entitled to due process protection

2  in students like Robinette who seek federal financial aid to attend a community college," and 'no

3  property right entitlement to federal financial assistance for students.' " (quoting <u>Robinett v.</u>

4  <u>Delgado Cmty. Coll.</u>, No. CIV.A.99-2545, 2000 WL 1720553, at *7 (E.D. La. Nov. 17, 2000))),

5  <u>report and recommendation adopted,</u> No. 14-CV-02480, 2016 WL 74795 (M.D. Pa. Jan. 7,

6  2016), <u>aff'd,</u> 685 F. App'x 158 (3d Cir. 2017).

7        It does not appear that Plaintiff disputes he did not fulfill the requirements of the SAP

8  Policy, stating in the complaint that "I was unsuccessful in completing all my courses according

9  to [SAP Policy]" (Compl. 3).  <u>See</u> <u>Holt v. Munitz</u>, 87 F.3d 1319 (9th Cir. 1996) ("The purpose of

10 the PRHF is to 'provide ... a program of grants to assist in making available the benefits of a

11 post-baccaulareate education to graduate ... students who demonstrate financial need.' 20 U.S.C.

12 § 1134d(a).  In light of this statute, it was reasonable for the defendants to request that Holt fill

13 out the financial-aid forms and it is unreasonable for Holt to contend that he had any property

14 interest in the fellowship funds absent proof of financial need.  Because Holt cannot establish

15 that he had a property interest in receiving PRHF funds, he cannot establish that he was entitled

16 to notice and a hearing under the due process clause.").  Courts looking to claims apparently

17 similar to what Plaintiff is claiming in regards to failing to comply with a SAP Policy, have

18 found no such property or liberty interest implicated:

19               Plaintiff's references to a "federal right to a hearing and to SAP
20               appeals" suggest possible claims under the Fourteenth
                 Amendment. However, to establish either a procedural or
21               substantive due process claim under the Fourteenth Amendment,
                 Plaintiff would first have to show that he had a constitutionally
22               protected liberty or property interest. He provides no basis for his
                 assertion that he was entitled to a hearing concerning the denial of
23               financial aid for education, and the Court is unaware of any such
                 right. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1,
24               37 (1973) (finding no fundamental right to education); *Bd. of*
                 *Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) ("To
25               have a property interest in a benefit, a person clearly must have
                 more than an abstract need or desire for it. He must have more than
26               a unilateral expectation of it. He must, instead, have a legitimate
                 claim of entitlement to it."); *see also Dozier v. Loop Coll.*, 776
27               F.2d 752, 753 (7th Cir. 1985) (finding "no right to college
                 education at public expense") (internal citations omitted).

28

1  Mondragon v. Baruch Coll., No. 15-CV-7378 (DLI)(LB), 2018 WL 4689192, at *4 (E.D.N.Y.
2  Sept. 28, 2018).[5]

3          There are insufficient facts to both determine whether Plaintiff had a protected property
4  interest, and whether the process he was afforded was sufficient, in for example Plaintiff alleges
5  he did complete some sort of written appeal process, but was not able to present oral arguments.
6  See Robinett, 2000 WL 1720553, at *7 ("The record does not support [a claim that Delgado
7  failed to hold a hearing on Robinett's financial aid disqualification] because Robinett fails to
8  establish that he had a property interest [and] even if plaintiff had a property right and even if
9  some of his due process claims had not prescribed, the undisputed facts establish that he received
10 adequate process [as] [a]fter he was notified of his disqualification in 1995, Robinett filed a
11 written appeal with Delgado's Financial Aid Office . . . [and] had the opportunity to explain why
12 Delgado should make an exception in his case to its policy that students who exceeded 95 hours
13 (or, under the current policy, 99 hours) are disqualified from financial aid."), aff'd, 273 F.3d
14 1095 (5th Cir. 2001).

15         Accordingly, the Court concludes that Plaintiff has not stated a claim for violation of his
16 due process rights under the Fourteenth Amendment.

17         **E.      Eleventh Amendment Immunity**

18         While Plaintiff's complaint does not state a viable claim for the reasons explained above,
19 assuming arguendo he did, the Court provides information to the Plaintiff concerning the ability
20 to sue these Defendants in both their official and individual capacities.

21

---

[5] The Mondragon court also found the Higher Education Act did not provide a private right of action under Section
22 1983:

> In light of Plaintiff's allegation that he submitted a timely SAP appeal under Section 484 of the
23 > Higher Education Act, the Court also has considered whether this Act provides a basis for his
> claim to a hearing and an appeal that is enforceable under § 1983. It does not. See Sanon v. Dep't
24 > of Higher Educ., 453 F. App'x 28, 29 (2d Cir. 2011) (finding that the Higher Education Act "does
> not provide student borrowers a private right of action to enforce its provisions.") (internal
25 > citations omitted); see also Shevtsov v. Los Angeles Cmty. Coll. Dist., 185 F. App'x 644, 645 (9th
> Cir. 2006) ("The district court ... properly concluded that [the plaintiff] could not bring a 42
26 > U.S.C. § 1983 claim based on an alleged violation of the Higher Education Act.") (internal
> citations omitted).

27 Mondragon, 2018 WL 4689192, at *4; see also Shevtsov v. Los Angeles Cmty. Coll. Dist., 185 F. App'x 644, 645
(9th Cir. 2006) ("The district court also properly concluded that Vladimir Shevtsov could not bring a 42 U.S.C. §
28 1983 claim based on an alleged violation of the Higher Education Act.").

1        Plaintiff does not sue the Fresno City College itself, which would have had Eleventh

2  Amendment immunity.  See Thomas, 2015 WL 13237069, at *2 ("Within California, the Ninth

3  Circuit has determined that Eleventh Amendment immunity extends to California community

4  college school districts.") (citations omitted); Young v. Reedley Cmty. Coll., No. 1:11-CV-590

5  GSA, 2012 WL 253213, at *4 (E.D. Cal. Jan. 26, 2012) ("Since Ninth Circuit law is clear,

6  Defendants RCC and SCCCD are entitled to Eleventh Amendment immunity for Plaintiff's

7  section 1983 and 1985 claims, as well as the policy and custom claim.").

8        Plaintiff does sue all Defendants in their individual *and* official capacities.  To the extent

9  the Defendants are sued in their official capacity they would also be immune under the Eleventh

10  Amendment as to monetary damages.  See Mitchell v. Los Angeles Cmty. Coll. Dist., 861 F.2d

11  198, 201–02 (9th Cir. 1988) ("We hold that, under California law, the district is a state entity that

12  possesses eleventh amendment immunity from the appellant's section 1981, 1983 and 1985

13  claims in damages and for injunctive relief.  Likewise, the individual defendants share in the

14  district's eleventh amendment immunity because they were sued in their official capacities.");

15  Grosz v. Lassen Cmty. Coll. Dist., 360 F. App'x 795, 799 (9th Cir. 2009) ("As stated above, the

16  District defendants have Eleventh Amendment immunity from § 1983 claims, and, thus,

17  plaintiffs may only proceed against Cissell on these claims."); Wasson v. Sonoma Cnty. Jr. Coll.

18  Dist., 4 F. Supp. 2d 893, 902 (N.D. Cal. 1997) ("Both parties acknowledge that the District is a

19  California community college district . . . all claims against the District and the Governing Board

20  are dismissed, without prejudice to refiling in state court.").

21        However, to the extent Plaintiff is requesting prospective injunctive relief by requesting

22  this financial aid status be restored to good standing, the Defendants may be sued in their official

23  capacity.  See Young v. Reedley Cmty. Coll., No. 1:11-CV-590 GSA, 2012 WL 253213, at *5

24  (E.D. Cal. Jan. 26, 2012) ("[O]ne exception to this rule is that the Eleventh Amendment does not

25  bar suits for prospective declaratory or injunctive relief against state officials in their official

26  capacity . . . Plaintiff has requested declarative and injunctive relief in addition to monetary

27  damages [and] [t]herefore, Defendant's Motion to Dismiss Defendant Uribe in his official

28  capacity is granted regarding Plaintiff's request for monetary damages, but is denied regarding

1  Plaintiff's request for declaratory and injunctive relief."); see also Wasson, 4 F. Supp. 2d at 903
2  ("When a plaintiff sues a state official in his or her official capacity for a violation of federal
3  constitutional or statutory law, the federal court may award an injunction governing the official's
4  future conduct, but may not award retroactive monetary relief . . . [a] state official is not a person
5  for purposes of § 1983 and may not be sued under § 1983 in his official capacity for damages,
6  although he may be sued for injunctive relief.").

7       The Defendants, as sued in their individual capacities, can be liable for monetary
8  damages.  See Wasson, 4 F. Supp. 2d at 902 ("The Eleventh Amendment does not bar federal
9  court suits against a state officer in his individual capacity, regardless of the relief sought.").

10      However, for the reasons explained above, Plaintiff's complaint does not state a
11 cognizable claim against any of the named Defendants.

12      **F.     Challenges to Constitutionality**

13      For the reasons explained above, Plaintiff's complaint does not satisfy the requirements
14 of Rule 8 or the requirements to state a claim under Section 1983.  Similarly, as to Plaintiff's
15 challenge that Title IV or Title 34 is unconstitutional, Plaintiff's vague generalized challenge to
16 the laws as a whole, do not state a cognizable claim.

17      When a plaintiff seeks to challenge a statute as unconstitutional there are two types of
18 challenges: "facial challenges" and "as-applied" challenges.  "Facial challenges seek to have a
19 statute declared unconstitutional on the face of the statute, and the "standard presents an
20 extremely high bar because a plaintiff must show that the statute is unconstitutional *in all*
21 possible applications and situations."  Isbelle v. Denney, No. 1:19-CV-00093-DCN, 2019 WL
22 5580951, at *2 (D. Idaho Oct. 29, 2019); see also S.D. Myers, Inc. v. City & Cnty. of San
23 Francisco, 253 F.3d 461, 467 (9th Cir. 2001) ("In order to prevail on this facial challenge to the
24 Ordinance, Myers must meet a high burden of proof; it must 'establish that no set of
25 circumstances exists under which the [Ordinance] would be valid.  The fact that [the Ordinance]
26 might operate unconstitutionally under some conceivable set of circumstances is insufficient to
27 render it wholly invalid.' " (quoting U.S. v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95
28 L.Ed.2d 697 (1987))); Vanguard Med. Mgmt. Billing, Inc. v. Baker, No. EDCV 17-965-

1   GW(DTBX), 2018 WL 6137194, at *7 (C.D. Cal. July 2, 2018) ("Thus, the fact that a statute

2   'might operate unconstitutionally *under some circumstances* is not enough to render it invalid

3   against a facial challenge.' " (quoting <u>City of Los Angeles, Calif. v. Patel</u>, 576 U.S. 409, 409,

4   135 S. Ct. 2443, 2446, 192 L. Ed. 2d 435 (2015))).  The standard was recently clarified as to a

5   vagueness challenged.  <u>See</u> <u>Helicopters for Agric. v. Cnty. of Napa</u>, 384 F. Supp. 3d 1035, 1039

6   (N.D. Cal. 2019) ("Before <u>Guerrero</u>, plaintiffs mounting a facial challenge for vagueness had to

7   'establish that no set of circumstances exists under which the statute would be valid,' a high bar .

8   . . [however] [o]ur court of appeals found that two Supreme Court decisions . . . expressly

9   rejected the 'no set of circumstances' test in the void for vagueness context.") (citations omitted).

10       The Court therefore finds Plaintiff's vague challenge to the entirety of the statutory

11  schemes underlying Title IV and Title 34, do not present a cognizable facial constitutional

12  challenge.

13       Additionally, Plaintiff's vague challenge to the entirety of the statutory schemes

14  underlying Title IV and Title 34, do not present a cognizable as-applied constitutional challenge

15  for purposes of Rule 8.  "As-applied challenges, on the other hand, do not look at the text, or

16  face, of the statute, but rather argue that even if a law is valid on its face, it may nonetheless—as

17  the name suggests—be unconstitutionally applied.  <u>Isbelle</u>, 2019 WL 5580951, at *2.  "The

18  question in an as-applied challenge is whether the statute is unconstitutional when applied in a

19  particular case," and therefore, [s]pecific facts are critical."  <u>Id.</u> (citations omitted).  Here, as the

20  Court found above, Plaintiff has not provided sufficient facts to satisfy the pleading requirements

21  of Rule 8, and for the same reason finds Plaintiff has not stated a cognizable as-applied

22  challenge.  <u>See</u> <u>Wal-Mart Stores, Inc. v. City of Turlock</u>, 483 F. Supp. 2d 987, 996–97 (E.D. Cal.

23  2006) ("When faced with a claim that application of a statute renders it unconstitutional, a court

24  must analyze the statute as applied to the particular case, *i.e.,* how it operates in practice against

25  the particular litigant and under the facts of the instant case, not hypothetical facts in other

26  situations."); <u>Dairy v. Bonham</u>, No. C-13-1518 EMC, 2013 WL 3829268, at *5 n.3 (N.D. Cal.

27  July 23, 2013) )"[T]o make an 'as applied' challenge a plaintiff must allege specific facts

28  regarding application of the challenged law.").

Accordingly, for all of the above reasons, the Court finds Plaintiff's complaint does not state a cognizable claim for violation of Plaintiff's federal rights.  Because Plaintiff did not file an amended complaint, based on the initially filed complaint, the Court recommends dismissal for failure to state a claim.

### G.    Failure to Prosecute and Comply with Court Order

Plaintiff has failed to comply with the May 10, 2023, order granting him leave to file an amended complaint.  (ECF No. 7.)  A court may dismiss an action based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules.  See, e.g. Ghazali v. Moran, 46 F.3d 52, 53-54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order to file an amended complaint); Carey v. King, 856 F.2d 1439, 1440-41 (9th Cir. 1988) (dismissal for failure to comply with local rule requiring pro se plaintiffs to keep court apprised of address); Malone v. United States Postal Serv., 833 F.2d 128, 130 (9th Cir. 1987) (dismissal for failure to comply with court order); Henderson v. Duncan, 779 F.2d 1421, 1424 (9th Cir. 1986) (dismissal for lack of prosecution and failure to comply with local rules).

"In determining whether to dismiss an action for lack of prosecution, the district court is required to consider several factors: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.' "  Carey, 856 F.2d at 1440 (quoting Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986)).  These factors guide a court in deciding what to do, and are not conditions that must be met in order for a court to take action.  In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d 1217, 1226 (9th Cir. 2006) (citation omitted).

In this instance, the public's interest in expeditious resolution of the litigation and the Court's need to manage its docket weigh in favor of dismissal.  In re Phenylpropanolamine (PPA) Products Liability Litigation, 460 F.3d at 1226.  Plaintiff was ordered to file an amended complaint within thirty (30) days of May 10, 2023.  Plaintiff has neither filed an amended complaint nor otherwise requested an extension of time to do so.

Plaintiff's failure to comply with the order of the Court hinders the Court's ability to move this action towards disposition, and indicates that Plaintiff does not intend to diligently litigate this action.

Since it appears that Plaintiff does not intend to litigate this action diligently there arises a rebuttable presumption of prejudice to the defendants in this action. In re Eisen, 31 F.3d 1447, 1452-53 (9th Cir. 1994). This risk of prejudice may be rebutted if Plaintiff offers an excuse for the delay. In re Eisen, 31 F.3d at 1453. Plaintiff has not responded to the Court's order so the risk of prejudice to the defendants also weighs in favor of dismissal.

The public policy in favor of deciding cases on their merits is outweighed by the factors in favor of dismissal. It is Plaintiff's responsibility to move this action forward. This action can proceed no further without Plaintiff's cooperation and compliance with the order at issue. There is no operative pleading that states a claim in this matter and the action cannot simply remain idle on the Court's docket, unprosecuted. In this instance, the fourth factor does not outweigh Plaintiff's failure to comply with the Court's orders.

Finally, monetary sanctions are not available to induce compliance because Plaintiff is proceeding in forma pauperis in this action. Additionally, a court's warning to a party that their failure to obey the court's order will result in dismissal satisfies the "consideration of alternatives" requirement. Ferdik, 963 F.2d at 1262; Malone, 833 F.2d at 132-33; Henderson, 779 F.2d at 1424. On May 10, 2023, the Court specifically informed Plaintiff why his complaint was deficient and did not state a cognizable claim. Plaintiff was specifically warned "[i]f Plaintiff fails to file a first amended complaint in compliance with this order, the Court will recommend to the district judge that this action be dismissed, with prejudice, for failure to obey a court order, failure to prosecute, and for failure to state a claim." (ECF No. 7 at 22 (emphasis in original).)

Accordingly, the Court finds that the balance of the factors weighs in favor of dismissing this action for Plaintiff's failure to submit an amended complaint in compliance with the Court's order issued May 10, 2023, and for Plaintiff's failure to prosecute this action despite the Court's express warning and opportunity to submit an amended complaint.

**V.**

**RECOMMENDATION AND ORDER**

Based on the foregoing, IT IS HEREBY RECOMMENDED that this matter be DISMISSED with prejudice for Plaintiff's failure to state a claim, failure to prosecute, and failure to comply with an order of the Court.

These findings and recommendations are submitted to the District Judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen (14) days** of service of these recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The District Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS FURTHER ORDERED that the Clerk of the Court be DIRECTED to randomly assign a District Judge to this action.

IT IS SO ORDERED.

Dated:   **June 28, 2023**

UNITED STATES MAGISTRATE JUDGE